## THE EXCHANGE BANK TAX CASES.

### WILLIAMS *v.* BOARD OF SUPERVISORS OF THE COUNTY OF ALBANY.

*(Circuit Court, N. D. New York.   July 23, 1884.)*

1. TAXATION OF NATIONAL BANK SHARES BY STATE — ACT OF LEGISLATURE OF NEW YORK—LAWS 1883, CH. 345—VALIDITY.

   The legislature of a state cannot validate a tax which is prohibited by the laws of the United States; but it is competent for it to sanction retroactively such proceedings in the assessment of a tax as they could have legitimately sanctioned in advance.

2. SAME — ACT OF NEW YORK LEGISLATURE OF 1881, CH. 271 — THE DEFECT IN THAT ACT.

   In the act of 1881, *c.* 271, Laws New York, the fatal vice was the denial of an opportunity to those assessed to be heard and permitted to obtain the deductions and corrections allowed by the general system of assessments.

3. SAME—VALIDATING ACTS.

   The general rule has often been declared that the legislature may validate retrospectively any proceedings which they may have authorized in advance; and it is immaterial that such legislation may operate to divest an individual of a right of action existing in his favor, or subject him to a liability which did not exist originally.   In a large class of cases this is the paramount object of such legislation.

4. SAME—VALIDATING ACT — PAYMENT OF TAXES IN ADVANCE OF OPPORTUNITY TO BE HEARD.

   If it was within the power of the legislature to provide for the collection of a tax by a system which requires the tax-payers to pay in advance of an opportunity to be heard, but permits them to have a subsequent hearing and to obtain restitution, if restitution ought to be made, the validating act was constitutional.

5. SAME—SUMMMARY METHODS OF DISPOSSESSION UNDER TAXATION—OTHERWISE IN JUDICIAL PROCEEDINGS.

   In judicial proceedings due process of law requires a hearing before condemnation, and judgment before dispossession; but when property is appropriated to or under the power of taxation, different considerations from those which prevail between individuals obtain.   It is not indispensable that a hearing be secured before assessment or before collection of the tax; but it is sufficient if reasonable provision is made for a hearing afterwards, a correction of errors, or a restitution of the tax or part of a tax unjustly imposed.

At Law.

*Matthew Hale,* for plaintiff.

*Peckham & Rosendale,* for defendant.

WALLACE, J.   This action is brought to recover certain taxes assessed against the plaintiff and several assignors of the plaintiff, in the years 1877, 1878, and 1879, and collected by the defendant. The persons thus assessed were stockholders of the National Albany Exchange Bank, of the city of Albany.   The assessors omitted in those years to place the names of the shareholders upon the assessment roll in accordance with the requirements of the state laws regulating assessments; and it was held by this court in *Albany City Nat. Bank* v. *Mahar,* 6 FED. REP. 417, that such omission rendered the tax illegal, because the requirement which was disregarded by the assessors was designed to afford tax-payers an opportunity for the

examination and revision of their assessments, and therefore should not be deemed directory merely, but essential, and a condition precedent to the validity of the tax.

It is insisted for the plaintiffs that the taxes thus collected were illegal, for the additional reason that the assessors violated the rule of uniformity prescribed by section 5219, Rev. St., which prohibits the taxation of shares in national banks at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state. This contention rests upon the fact that the assessors habitually and intentionally adopted the practice, in assessing individuals upon bank shares held by them in various banks of the city of Albany, of estimating the value of the shares at par, and assessing them at that valuation less a deduction of the assessed value of the real estate of the bank, although, as a matter of fact, the value of such shares differed in different banks, so that while the shares in all the banks were really worth more than their par value, the shares in some of them were worth less than the shares in others. It does not appear affirmatively that the rule of valuation thus adopted operated to assess the shares of the stockholders here, higher in proportion to their value than moneyed capital generally. It was applied alike to shares in national banks and shares in state banks, and it is not shown how the capital of individual bankers was valued. The action of the assessors may have been a palpaple violation of their duty under the laws of the state; and it has been so characterized in the opinions of the judges of the state courts, when the validity of the assessments has been questioned; but it does not follow that it was an unfair discrimination against shareholders of national banks, and therefore in contravention of the federal law. The question, however, is not an open one in this court, it having been decided adversely to the plaintiff upon the same state of facts in *Stanley* v. *Board of Sup'rs*, 15 FED. REP. 483. The disposition which must be made of this question is fatal to the plaintiff's case, because the case does not turn upon the point of the illegality of the original assessments. That point has already been decided in favor of the plaintiff. The case turns upon the efficacy of the curative act passed by the legislature of the state to validate the assessments in controversy. Chapter 345, Laws 1833. Undoubtedly, the legislature could not val'date a tax which was prohibited by the laws of the United States; but it was competent for them to sanction, retroactively, such proceedings in the assessment of the tax as they could have legitimately sanctioned in advance.

The act of 1883 is the second legislative attempt to validate the taxes in dispute. The prior act (chapter 271, Laws 1881) was adjudged by this court, in *Albany City Nat. Bank* v. *Maher*, 9 FED. REP. 884, unconstitutional, because it was in effect a legislative assessment of a tax upon a body of individuals, without apportionment or equality as between them and the general body of tax-payers.

The fatal vice of the act was the denial of an opportunity to those assessed to be heard and permitted to obtain the deductions and corrections allowed by the general system of assessments.

The present act is carefully framed to obviate the objections which were fatal to the former act. It legalizes and confirms the assessments contained in the assessment rolls for the several wards of the city of Albany for the years 1876, 1877, and 1878, and on file in the office of receiver of taxes, subject to the right of the parties interested to claim any deduction from or cancellation of the assessments to which they would have been entitled, under the laws existing when the respective assessments were made; and it provides for a reasonable notice, and a reasonable opportunity for the parties to be heard, and to obtain such deductions or remission of the tax as may be just. It also provides for restitution to all the parties of any sum improperly included in the tax, with interest from the time the tax carried interest.

The only objection to the validating act, which seems to deserve consideration, is found in the circumstance that the tax-payers have not been given an opportunity to be heard until after they were compelled to pay their taxes. The general rule has often been declared that the legislature may validate, retrospectively, any proceedings which they might have authorized in advance. And it is immaterial that such legislation may operate to divest an individual of a right of action existing in his favor, or subject him to a liability which did not exist originally. In a large class of cases this is the paramount object of such legislation. If, therefore, it was within the competency of the legislature to provide for the collection of a tax by a system which requires the tax-payers to pay in advance of an opportunity to be heard, but which permits them to have a subsequent hearing and to obtain restitution, if restitution ought to be made, the validating act was constitutional.

Under the power of taxation the property of the citizen is appropriated for the public use to the extent to which he should contribute to the public revenues, and he is liable to have a demand established against him on the judgment of others regarding the sum which he should justly and equitably contribute. He cannot be deprived of his property, even under the power of eminent domain, without due process of law; or, in other words, without notice and an opportunity to be heard; and this is an essential requisite of every lawful proceeding which affects rights of property or of person. In judicial proceedings due process of law requires a hearing before condemnation, and judgment before dispossession; but when property is appropriated to the public use under the power of eminent domain, or under the power of taxation, different considerations from those which prevail in controversies between individuals obtain. Thus, when property is taken under the power of eminent domain by the state, or by municipal corporations by state authority, the adjudications sanc-

tion the validity of laws which permit the property of the citizen to be appropriated before a hearing, and before compensation. It is sufficient if provision is made by the law by which the party can obtain compensation, and for a hearing before an impartial tribunal to award the compensation. And it is assumed by the decisions in these cases that the property of the municipality is a fund to which he can resort without risk of loss. Cooley, Const. Lim. 560, 561. There seems to be no reason for a different rule when the money of the tax-payer is appropriated by the sovereign power under the right of taxation. The reason why a right to be heard by the tax-payer respecting the imposition of a tax is valuable and essential for his protection, is in order that he shall not be obliged to bear a disproportionate part of the public burden. If the taxing laws secure him in this right as effectually as is deemed sufficient in laws authorizing his property to be taken under the power of eminent domain, it would seem, upon analogy and upon principle, that he is protected sufficiently, and that the taxing laws would not contravene the constitutional prohibition.

Undoubtedly, it is beyond the power of the legislature to validate the acts of taxing officers of a character which cannot be justified as an exercise of the taxing power; as where a part of the property in a taxing district should be assessed at one rate and a part at another, or if persons or property should be assessed for taxation in a district which did not include them. And it is stated in general terms, by a text writer of high authority, that a validating act cannot cure the illegality of an assessment made without any notice to the persons interested. Cooley, Tax'n, 227, 228. The case of *Marsh* v. *Chesnut*, 14 Ill. 223, and *Billings* v. *Detten*, 15 Ill. 218, are referred to as sustaining the proposition. These were cases where the curative act was held bad for the same reason that the curative act of 1881 was held to be nugatory by this court,—because it did not provide for an assessment upon notice to the tax-payer, and thus perpetuated the vice of the original assessment. The present act, as has been said, is framed to obviate this objection. No adjudged case has been cited by counsel or has met the attention of the court where such an act has been considered. It is asserted in many cases that notice and an opportunity for hearing of some description are matters of constitutional right; but it has nowhere been declared that it is indispensable that the hearing should be one in advance of the collection of the tax. The operation of the present act is to preserve, substantially, to the tax-payers, the right of which they were originally deprived, to give them an opportunity to question the justice of the assessment, and to restore to them the sums which were illegally collected of them. In view of the large and almost unlimited discretion which resides in the legislature to regulate the mode and conditions of taxation, it is believed to be valid and effectual to legalize the proceedings here.

Judgment is ordered for the defendant.